UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBIE L. FREEMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO:   14-2461** |
| **FLORIDA PARISHES JUVENILE DETENTION CENTER** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (R. Doc. 16)** filed by Defendant, Florida Parishes Juvenile Detention Center ("FPJDC"), seeking summary judgment pursuant to Federal Rule of Civil Procedure 56. FPJDC seeks to dismiss Plaintiff, Abbie L. Freeman ("Freeman"), sexual harassment claim pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*., 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[1] The motion is opposed. *See* R. Doc. 22. It was heard on the briefs on January 13, 2016.

I.      **Background**

Abbie L. Freeman ("Freeman") filed this lawsuit against her former employer, Florida Parishes Juvenile Detention Center[2] pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000e ("Title VII"), for allegedly being the subject of gender and race discrimination by treating misconduct by white employees differently from misconduct by black employees.

---

[1] *See* R. Doc. 16-1.

[2] The Florida Parishes Juvenile Justice District is established as a political subdivision of the state of Louisiana with territorial jurisdiction throughout the 21st and 22nd Judicial District of Louisiana which includes the Parishes of St. Helena, St. Tammany, Tangipahoa and Washington. See L.S.A.-R.S. 15:1094 et. seq.  The district is managed by the Florida Parishes Juvenile Justice Commission, which is charged with operating and managing a juvenile detention facility, shelter care facility and such other juvenile facilities as are useful and necessary to carry out he directives set forth in the enabling legislation.

Freeman by example points to the conduct of a JDS Fitzgerald (improperly identified as Fitzpatrick) a white male employee who abandoned his job and was allowed to return to work. (Rec. Doc. 1)  Freeman also complains that all of the management officials are white men and that because there are more black employees in order to keep the white employees, management is more tolerant of their misdeeds than the misdeeds of the black employees. (Id.)

Freeman worked for the Center for almost two years from July 11, 2011, to June 21, 2013. During that period of time, according to Freeman's personnel file, she failed to report timely on several occasions[3], failed to monitor her sick leave[4], used profanity directed to a juvenile while in the work place on several occasions[5] and displayed an unprofessional attitude.[6]  The Center contends that it was her repeated failure to comply with its workplace policies and failure to improve her job performance that resulted in her termination on June 21, 2013.

Freeman does not dispute that she repeatedly failed to report to work on time.  She does contend however that the sick leave policy is enforced arbitrarily and that because she is a caregiver she should have received more sick leave. (Rec. Doc. 22 at p. 2)  Although not expressly stated, she suggests that the leave policy, which was created by all white men, was designed to impact women more. (Id.)  Freeman further contends that there is no formal sick leave policy requiring its employees to maintain a certain number of hours of sick leave and that this policy disproportionately impact female employees.[7]  Freeman does not respond to the allegation regarding her tardiness, use of profanity in the workplace, or that she displayed an unprofessional

---

[3] Employee Coaching Letters of October 21, 2011, March 10, 2012, April 26, 2012, June 1, 2013, and June 3, 2013. (Exhibits 4, 6, 7, 11 and 12).

[4] Exhibit 5.

[5] Exhibit 9 and 13.

[6] Exhibit 10.

[7] Rec. Doc. 32-2, Supplemental Opposition at p. 1.

2

demeanor in the workplace. She does however try to provide explanations for several employee coaching letters and in some instances dispute whether a coaching letter should have been issued.[8] Specifically, Freeman contends that the Employee Rule Violation ("ERV") report of June 14, 2013, has the hallmarks of a fabricated charge because (1) it was not on a grievance form (2) it was not observed as an Unusual Occurrence Report by Assistant Shift Supervisor, Latiya Smith at that time (3) she was not consulted on the ERV and (4) the ERV resulted from the threat of a juvenile who disliked her and was out to get her fired.

She does contend however that she participated in the self-help group which was an opportunity to meet with a staff psychologist where she complained about management. (Rec. Doc. 22) She does not describe the complaint but contends that after she complained she could no longer seek self-help and her access to social media was blocked by her employer, which she contends constitutes retaliation. (Id. at p. 3) In her supplemental memorandum, she adds that she complained about her bosses riding bikes, working out, showering on the clock, and eating for free in their offices and training areas resulted in her employer retaliating against her.[9] She also complained that shortly after her statements to the self-help group, she was issued an ERV but not terminated. She argues that she was not terminated because the proximity of her comments to the self-help group would make defendants' retaliation effort appear obvious. (Id.) Having set forth the position of the parties, the Court will proceed with considering the merits of the subject motion.

## II. Standard of Review

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and

---

[8] Declaration of Abbie Freeman, Rec. Doc. 22-5, p. 1.

[9] Second Declaration of Latiya Smith, Rec. Doc. 32-3.

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S. Ct. 2548 (1986). In such a case the moving party must "establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252. The moving party's burden is therefore "understandably heavier" where that party is the plaintiff. *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437, 447 (E.D. La. 2011).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322–24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.*, 337

F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment). Though the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 254.

The summary judgment standard in an employment discrimination matter is premised upon a burden-shifting analysis from *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Thereunder, the Court must first determine if the plaintiff has established a prima facie case of discrimination, sufficient to raise an inference of discrimination. *McDonnell-Douglas*, 411 U.S. at 802; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (finding that in Title VII actions, a prima facie standard is used for evidentiary purposes on summary judgment); *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285 (5th Cir. 1986) ("The McDonnell-Douglas formula . . . is applicable . . . in a . . . summary judgment situation.").

"Establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (citing *Burdine*, 450 U.S. 248). "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to different factual situations." *McDonnell*, 411 U.S. at 802 n.13. "There is no doubt that vague or conclusory allegations of discrimination or harassment are not enough to survive summary judgment." *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998).

### III.     Analysis

#### A.     Race Claim

Freeman contends that she was discriminated against due to her race (black) and gender (woman). Freeman alleges that the Center treated its white line employees different from its black line employees. By way of example she contends that JDS Fitzpatrick a white male employee who abandoned his job and was allowed to return to work. (Rec. Doc. 1)

Freeman further contends that the sick leave policy is enforced arbitrarily and that because she is a caregiver she should have received more sick leave. (Rec. Doc. 22 at p. 2)  Although not expressly stated, she suggests that the leave policy, which was created by all white men, was designed to impact women more. (Id.)   Freeman contends that after she complained she could no longer seek self-help and her access to social media was blocked by her employer which she contends constitutes retaliation. (Id. at p.3)  She contends further that the June 14, 2013, incident has the hallmarks of a fabricated incident because the complaint is based upon second hand information. (Id. at. p.4)

The Center does not dispute that Freeman is (1) a member of a protected class, (2) was qualified for the position, and (3) suffered an adverse employment action. Where the parties disagree is on the fourth element required to establish a racial discrimination claim which is that similarly situated people outside of the protected class were treated differently. It contends that Freeman was terminated because of her repetitive non-compliance with workplace policies consisting of not showing up to work on time, using profanity towards juveniles detained at the facility, and the display of unprofessional behavior in the workplace.

Title VII has proscribed "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power* Co., 401 U.S. 424, 431, 91 S. Ct.

849, 853 (1971). If a plaintiff cannot establish discrimination with direct evidence, then a plaintiff must proceed under the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). The *McDonnell Douglas* pretext analysis places the initial burden on the plaintiff to establish a *prima facie* case of discrimination. *Olsen v. Marshall & Ilsley Corp.,* 267 F.3d 597, 600 (7th Cir. 2001).

To state a claim for race discrimination, a plaintiff initially must demonstrate: (1) he is a member of a protected class; (2) he performed his job satisfactorily and was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *See McDonnell–Douglas,* 411 U.S. at 802.

Only if a plaintiff successfully produces evidence of a *prima facie* case does the burden then shift to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S. Ct. 2742 (1993); s*ee also Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla.,* 342 F.3d 1281, 1289 (11th Cir. 2003). However, "[t]he methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1092 (11th Cir. 2004) (finding that a plaintiff's discrimination claim is not doomed simply because there is not a similarly situated employee who may be used as a comparator).

Freeman, a black female, is clearly in a protected class. However, she does not present evidence as required by *McDonald-Douglas* that she performed her job in accordance with her employer's expectations.

She does allege however that the "similarly situated employee" who is not a member of her class is Fitzpatrick and that he was treated more favorably because he violated workplace policy by abandoning his job and yet they allowed him to return to work. In a broad reading of Freeman's claim she is alleging that because she and Fitzpatrick were both line employees, her employer should have overlooked her misdeeds and allow her to continue to work.

Generally, a valid comparator is one who holds a similar position and reports to the same supervisor. *Bobo v. United Parcel Service, Inc.,* 665 F.3d 741, 114 (6th Cir. 2012); *see also Santillana v. Florida Stae Court System*, 450 F. App'x 840 (11th Cir. 2012). The Center does not dispute the fact that Fitzgerald and Freeman held similar positions or even that they reported to the same supervisor. The dispute however is centered on the fact according to Freeman, Fitzgerald misbehaved and was allowed to continue his employment and she was not allowed to do so.

Russell Sanders, the Director of Operations, in an affidavit states that the Center does not overlook or excuse conduct by white JDS officers that would not be tolerated by a black JDS officer. (Affidavit Russell Sanders, Rec. Doc. 16-4, p. 4) Sanders also states that Fitzpatrick was first hired by the Center on September 26, 2011, and he voluntarily resigned six months later. (Id 30 at p. 4) Sanders further states because Fitzpatrick's previous work history was favorable, he was rehired effective August 5, 2013, but later violated workplace policy on three occasions and was terminated on September 4, 2014.[10] (Id.)

---

[10] Sanders affidavit indicates that on October 24, 2013, an ERV was issued to JDS Fitzpatrick for making inappropriate comments about his work at the Detention Center in social media and a written reprimand was issued. On February 17, 2014, another ERV was issued to JDS Fitzpatrick for sleeping on the job and a "Job at Risk" letter was issued to him. In addition, Sanders indicates that on September 4, 2014, a third ERV was issued to JDS Fitzpatrick for an egregious use of bad language and he was terminated effective that date. *See* Affidavit of Sanders, Rec. Doc. 16-4.

Freeman's claim of race discrimination fails.  First, she has not provided evidence that she performed the job as her employer wanted.  She does not contest that she showed up to work late on several occasions and she does not deny that she used profanity towards a juvenile.  Her complaint is that she did not see a grievance for the juvenile complaint which was required to be completed contemporaneous to the incident.  Instead, Freeman contends that on occasion the Center would learn of the event later and would require the employee and the juvenile to write a grievance after the fact. Notably, this does not constitute evidence contradicting the fact that she used profanity towards a juvenile at work nor that the grievance was completed after the incident. (Affidavit Abbie Freeman, Rec. Doc. 22-5)  The Court finds that as a matter of law Freeman has failed to meet her burden of proof that she was discriminated on the basis of her race (black).  As a result, the Court did not reach the issue of whether the employers stated reason was legitimate because the clamant failed to meet her prima facie burden of proof.[11]

### B.    Gender Claim

Although not said very artfully, Freeman attempts to assert a gender claim.  Specifically she alleges that the Center's sick leave policy is unwritten and arbitrarily administered by the all-white male management.  She suggests that the sick leave policy as implemented may impact women including her more than male employees.

Although the Center does not specifically address why Freeman's gender claim is insufficient, rhey do contend that Freeman's claim about receiving low sick leave warnings which was purportedly arbitrarily administered and which may impact women more than men, is irrelevant, insufficient, and does not state a claim of discrimination.

---

[11] The Court notes that Freeman's attempt to provide explanations for the Employee Coaching Letters she received.  However, because she failed to meet her *prima facia* case, the burden did not shift to the employer to provide a legitimate business decision.

Plaintiff may establish gender discrimination under Title VII through either direct or circumstantial evidence. *See Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 309 (5th Cir. 2004). The nature of the evidence determines the framework to be used in analyzing the plaintiff's claim. *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1985). The *McDonald- Douglas* framework applies to a gender claim. See Id *Ross v. University of Texas at San Antonio,* 139 F.3d 521, 526 (5th Cir.1998).

The sick leave policy for the Center provides that it is accrued for bona-fide illnesses of self or immediate family members to obtain medical treatment. (Rec. Doc. 22-2 at p. 41) The policy provides that sick leave may be used for no less than one half day at a time. (Id.) The policy provides that sick leave accrues from the date of hire, but there is a 90-day "banking period" which can be used only after the completed 90-period and it accrues at a rate of 3.6923 hours per pay period and the hours carry over if unused. (Id.) The Center's policy indicate that a maximum of 240 sick leave hours can accrue. The policy further provides that an illness resulting in three (3) or more days of absence must be supported by an attending physician's statement. (Id.)

The employee manual further provides that when an employee fails to produce a full-medical release from a certified physician if required, he may be placed on leave without pay until a full medical release is obtained. (Rec. Doc. 22-2) The policy also provides that the Executive Director may dismiss an employee for non-disciplinary reasons including exhaustion of sick leave. (Id. at p. 19)

Latiya Smith, a former Assistant Shift Supervisor for C-Team to which Freeman was assigned[12], states that there was no written sick leave policy that an employee must maintain a

---

[12] Smith resigned according to Sanders after several disciplinary actions. Smith however disputes Sanders statement and clarifies that she resigned after receiving one ERV but does not clarify how her employment ended. She

certain number of sick leave hours. (Rec. Doc. 22-4 at p. 5). She further states that the Center made an oral policy that primarily impacted female employees more so than males because females typically must take leave not only for themselves but for their children. (Id.)

Even if Freeman established the first three requirements of *McDonald-Douglas*, which she has not, her gender claim fails. In considering her gender claim she suggests that the sick leave policy impacted women, which includes her, more than male employees. While Smith states that there was no requirement that the employee must maintain a certain amount of sick leave hours, the employee manual does provide that an employee can be discharged for exhausting it. Although there was no expressed requirement to maintain a minimum, the notice provided by the employer to its employees that they were at risk of exhausting the hours was to prevent its employees from reaching the point of no return resulting in grounds for discharge.

Additionally Freeman contends that the ERV she received during Hurricane Isaac was not proper because she was denied the ability to pick-up her son and return him to her work. She complains that she should have been allowed to leave. According to the Center, she received the ERV because she used profanity and was cited for malfeasance.

It is unclear how the ERV violated the Center's sick leave policy or was related to her race or gender. The court notes further that Freeman does not dispute that she used profanity during this time period. Therefore, Freeman's attempt to assert a gender claim fails as a matter of law.

C. **Retaliation Claim**

Freeman attempts to assert a retaliation claim, although not raised in her complaint. The alleged retaliation arose when she went to self-help to speak to a psychologist. It was during this

---

does mention a 2014 Inspector General investigation in which they spent time reviewing security footage, rummaging through employee mail. Rec. Doc. 32-3.

time that she complained to Dr. Kim that members of management took bike rides on company time, that her manager spent time on social media during work hours, and that management would dress down on Fridays. In her supplemental memorandum, she adds that she also complained about her bosses working out, showering on the clock, and eating for free in their offices and training areas and that these complaints resulted in her employer retaliating against her. Freeman contends that after she complained all social media was blocked on the Center's computers.

The Center contends that Freeman's alleged complaints to the self-help group are irrelevant and a veiled attempt to assert a retaliation claim. The Center contends that her effort at trying to allege retaliation fails because she only pointed to the fact that the Center blocked all social media at the Center.

Under Title VII, a plaintiff establishes a *prima facie* case of retaliation by showing: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651-652 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

Once the plaintiff makes a *prima facie* case, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory purpose for the employment action. *Pineda v. United Parcel Ser., Inc.*, 360 F.3d 483, 486–87 (5th Cir. 2004). If the defendant meets this burden, the burden shifts back to the plaintiff, who must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose. In retaliation cases in the Fifth Circuit, where the defendant has proffered a nondiscriminatory purpose for the adverse employment action, the plaintiff must show that "but for" the discriminatory purpose, he would not have been terminated. *Feist v. La., Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454

(5th Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2533 (2013)); *Pineda*, 360 F.3d at 486–87. To avoid summary judgment, the plaintiff "must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454.

In looking at the affidavit of Freeman, she alleges that she complained about her manager's misconduct and that one manager used social media in the work place. After she complained all employees were precluded from accessing social media. Smith, her former supervisor complained about management riding bicycles, exercising and showering on the clock. Removing social media access in the work place of a governmental entity is not an adverse action. Freeman does allude to the fact that after the disclosure to the self-help group she received an ERV but that she was not terminated at that time. (Rec. Doc. 32-2 at p. 3) Therefore, Freeman's attempt to assert a retaliation claim fails as a matter of law.

### IV.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Rec. Doc. 16)** is **GRANTED** and Freeman's race, gender and retaliation claims filed pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*., are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 10th day of February 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

13