UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ABBIE L. FREEMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO:  14-2461** |
| **FLORIDA PARISHES JUVENILE DETENTION CENTER** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER & REASONS

Before the Court is Abbie L. Freeman's **Motion for New Trial (R. Doc. 39)**[1] seeking an Order from the Court to reconsider its decision to dismiss summarily her retaliation claim pursuant to Title VII. The motion is opposed. R. Doc. 40. The motion was submitted on April 20, 2016.

### I.   Procedural Background

Abbie L Freeman filed suit pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000e seeking to recover damages against the Florida Parishes Juvenile Detention Center ("FJDC") as a result of race and gender discrimination and retaliation. She alleged that FJDC treated misconduct by white employees differently than misconduct by black employees. R. Doc. 1.

Freeman worked for FJDC for two years – July 11, 2011, to June 21, 2013 – and her personnel file revealed that she repeatedly failed to report to work on time, failed to monitor her sick leave, used profanity directed towards juveniles, and displayed an unprofessional attitude. Notwithstanding her negative marks, Freeman claims that she was terminated in retaliation for complaining about her managers to her self-help group. The self-group group gave employees an opportunity to meet with a psychologist via a videoconference service and air workplace

---

[1] Pursuant to Federal Rule of Civil Procedure, "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The Judgement (R. Doc. 38) in this matter was filed on February 28, 2016. Plaintiff timely filed the instant motion on the twenty-eighth day, March 9, 2016. R. Doc. 39.

concerns. She complained that white male managers were allowed to exercise and shower while on duty, access social media, and leave the facility to ride bicycles.

This matter was before the Court upon consent of the parties. R. Doc. 12. Defendant filed a motion for summary judgement on December 7, 2015. R. Doc. 16. After thorough consideration of FJDC's Motion for Summary Judgment and Freeman's opposition, the Court granted FJDC's Motion for Summary Judgment and dismissed Freeman's race, gender, and retaliation claims on February 10, 2016. R. Docs. 37, 38. With respect to her retaliation claim that is the subject of the instant motion, the Court reasoned that Freeman did not establish that she suffered from an adverse employment action. R. Doc. 37, p. 13.

Freeman now seeks reconsideration of the dismissal of her retaliation claim. The Court notes that while she titled her motion as a motion for new trial, she is actually seeking reconsideration of the ruling pursuant to Federal Rule of Civil Procedure 59(e). She contends that the Court's decision dismissing the retaliation claim was erroneous as a matter of law. She further seeks consideration of new evidence to prevent a manifest injustice. Freeman contends that the definition of "adverse employment action" includes more than demotion and termination. Freeman contends that the employee rule violation ("ERV") report and the job-at-risk letter she received after she complained to her self-help group was materially adverse enough to dissuade a reasonable worker from making a discrimination charge.

FJDC opposes the motion. R. Doc. 40. It argues that Freeman: (1) was terminated for legitimate business reasons, (2) she did not engage in a protected activity as she never complained about race or gender discrimination to management, and (3) was not subject to a materially adverse employment action.

Having set forth the procedural history and the position of each party, the Court will proceed with considering the merits of the subject motion.

## II.     Proper Standard of Review

As a threshold matter, the Court notes that a motion for new trial under Rule 59(a) is not a proper method for challenging a grant of summary judgment. "Where, as here, the court has disposed of the case on a motion for summary judgment, such a motion is properly classified as one filed pursuant to Rule 59(e)." *Harris v. New Werner Holding Co., Inc.*, No. 3:08–cv–1750–L, 2009 WL 4249240, at *1 (N.D.Tex. Nov. 25, 2009) (citing *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n.1 (5th Cir. 1996) ("The Patins' reconsideration motion was styled as a motion for new trial, pursuant to Fed.R.Civ.P. 59(a), but was correctly analyzed and decided in the district court as a Rule 59(e) motion to reconsider entry of summary judgment.")). As this motion requests reconsideration of the Court's entry of summary judgment, the Court will analyze the motion pursuant to Rule 59(e).

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). The Fifth Circuit "has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

A motion to alter or amend judgment may be granted on grounds including: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct clear error or prevent manifest injustice. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). It is "an extraordinary remedy that should be

used sparingly," but courts have a great deal of discretion in ruling on a 59(e) motion. *Templet*, 367 F.3d at 479.

## III. Analysis

Freeman now seeks reconsideration of the Court's entry of summary judgment on her retaliation claim. R. Doc. 39-1, p. 2.[2] She argues that the Court's reasoning did not consider the United States Supreme Court decision, *Burlington Northern & Santa Fe Ry*, 548 U.S. 53 (2006). There, the Court held that "Title VII retaliation provision contains materiality requirement and objective standard; thus, provision requires showing that reasonable employee would have found the employer's challenged action materially adverse." *Id.* at 68.

Although not plainly stated, in applying *Burlington* to her case, Freeman appears to argue that she suffered a "materially adverse" employment action given the context of her termination. Mainly, that she was given an employee rule violation (R. Doc. 16-15) and a job-at-risk letter (R. Doc. 16-16) soon after she complained about management in her self-help group. R. Doc. 39-1, p. 2. She contends that an adverse employment action does not require an ultimate employment action, such as demotion or termination, but is determined by context.

In response, FJDC reasserts many of the arguments that it advanced its motion for summary judgment. Mainly that Freeman: (1) was terminated for her verbal abuse on a juvenile and for repeatedly reporting to work late, (2) did not engage in a protected activity that warranted protection under Title VII as she never complained about race or gender discrimination to management, and (3) removing social media access in the work place is not an adverse employment action. Additionally, in response to Freeman's instant motion, FJDC contends that in applying *Burlington*, there was no adverse employment action to support her retaliation claim.

---

[2] Freeman does not challenge the Court's dismissal of her race and gender discrimination claims. R. Doc. 39-1, p. 2. She writes, "Plaintiff does not seek a new trial on the race and gender discrimination claim, but does seek a new trial on the retaliation claim." *Id.*

Further, the ERV report and job-at-risk letter that she received were based on her unsatisfactory behavior and unrelated to her complaints about management. R. Doc. 40, p. 8.

The Court first notes that Freeman is shifting her position from what was asserted in her response to FJDC's motion for summary judgment. In that submission, Freeman argued that after she participated in the self-help group her complaints got back to management. R. Doc. 22, p. 3. Thereafter, the self-group was discontinued and social media access was blocked in the workplace. *Id.* Now, for the first time, Freeman argues that the adverse employment that she suffered was the issuance of an ERV and a job-at-risk letter after she complained about management in her self-help group. R. Doc. 39-1, p. 2.

As noted above, the Fifth Circuit "has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

The fact that Freeman received an ERV report and a job-at-risk letter is information that was available to Freeman at the time she filed both her lawsuit and her response to FJDC's motion for summary judgment. However, she did not argue that the issuance of those documents constitute an adverse employment action in her prior submissions to the Court. Nevertheless, the Court will address Freeman's position and FDJC's opposition regarding whether the Court should have applied *Burlington* in its analysis.

The crux of her instant motion is that the Court should have held that the fact that she received an ERV report and a job-at-risk letter after she spoke out during her self-help group is sufficient to support her retaliation claim. *Burlington* held that to establish an adverse employment action, a Plaintiff must show that "a reasonable employee would have found the

5

challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68, 126 S.Ct. 2405 (internal quotation marks omitted).

However, it is important to distinguish the facts in *Burlington* from the instant matter. There, the Plaintiff (female) who was assigned to operate a forklift alleged that her supervisor made insulting and inappropriate remarks in front of her male co-workers. *Id.* at 58. Plaintiff complained to management. Thereafter, the supervisor who made the insults was suspended for ten days and ordered to attend a sexual-harassment training session. *Id.* However, the Plaintiff was removed from her forklift duty and assigned to "standard track laborer tasks." *Id.* at 59.

Plaintiff then filed two EEOC complaints and alleged that her reassignment amounted to unlawful gender discrimination and retaliation for making the claim against her supervisor. After she filed her EEOC complaint, Plaintiff and her immediate supervisor disagreed about which truck she should transport from one location to another. *Id.* Later that day, Plaintiff was told that she was insubordinate because of the disagreement and was suspended without pay. She then initiated an internal grievance procedure which found that she had not been insubordinate. She was reinstated and awarded back pay for the thirty-seven days that she was suspended. *Id.*

Upon review, the Supreme Court affirmed the Sixth Circuit's, *en banc*, judgment in favor of her retaliation claim. *Id.* The Court noted the diverging standards that the Circuit courts applied for Title VII retaliation claims. Some Circuits, such as the Sixth, defined an "adverse employment action" as a "materially adverse change in the terms and conditions of employment." Others employed an ultimate employment decision standard which limited actionable retaliatory conduct to acts such as "hiring, granting leave, discharging, promoting, and compensating." *Id.* at 60. Further, other Circuits held that a Plaintiff must establish that the

"employers challenged action would have been material to a reasonable employee" which means "that the action would likely have dissuaded a reasonable worker from making or supporting a change of discrimination." *Id.* The Supreme Court agreed with the former of these standards and ruled that for a Title VII retaliation claim, a Plaintiff "must show that a reasonable employee would have found the challenged actions materially adverse 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68.

The Court then applied the standard to the Plaintiff's claim. The Court determined that the Plaintiff was subjected to a material adverse employment action given that: (1) her job duties were altered after she lodged a complaint against her supervisor[3] and (2) she was suspended thirty-seven days based on unsubstantiated accusation that she was insubordinate which followed the filing of her EEOC charge. *Id.* at 70-73.[4]

The facts before the Court with respect to Freeman's claims are inherently different from *Burlington*. The standard outlined in *Burlington* is that an adverse employment action must be severe enough that it would dissuade a reasonable worker from making or supporting a charge of discrimination. Here, Freeman never filed an EEOC complaint and never complained to management, as in *Burlington*, regarding her claims. Moreover, even after Freeman received her ERV report and her job-at-risk letter she did not suffer a materially adverse employment action,

---

[3] The Court reasoned that "the jury had before it considerable evidence that the track laborer duties were 'by all accounts more arduous and dirtier'; that the 'forklift operator position required more qualifications, which is an indication of prestige'; and that 'the forklift operator position was objectively considered a better job and the male employees resented White for occupying it'. Based on this record, a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee." *Id.* at 72 (internal quotation omitted).

[4] The Court reasoned that her suspension was materially adverse because although she received back pay "[Plaintiff and her family] had to live for 37 days without income. They did not know during that time whether or when [the Plaintiff] could return to work. Many reasonable employees would find a month without a paycheck to be a serious hardship." *Id.* at 72. The Court noted that adverse employment actions must be viewed in context. *Id.* at 55 ("[T]he significance of any given act of retaliation will often depend on the particular circumstances.").

as in *Burlington* where the Plaintiff was reassigned and suspended after she filed her complaint. Again, as noted previously, the only adverse employment that Freeman alleges she suffered is that social media was banned from the facility, the self-group ended, and that she received a job-at-risk letter and an ERV report. These actions did not materially alter Freeman's job responsibilities or status as in *Burlington.*

Moreover, cases that have been decided within the Fifth Circuit post-*Burlington* have held that <u>written reprimands and warnings</u>, are not adverse employment actions, particularly when they are issued in response to work-rule violations and do not dissuade an employee from pursuing complaints. *See Grice v. FMC Techs., Inc.*, 216 Fed.Appx. 401, 407 (5th Cir. 2007) (written reprimands were not materially adverse, even if unjustified); *DeHart v. Baker Hughes Oilfield Ops., Inc.*, 214 Fed.Appx. 437, 442 (5th Cir. 2007) (a written warning for insubordination, being argumentative, and excessive tardiness was not an adverse employment action).

Here, the weight of the summary judgment evidence shows that Freeman was warned repeatedly about her unprofessional conduct as she received two job-at-risk letters and four employee violation reports during her time with FJDC. These documents constitute written reprimands which are formal expressions of disapproval. In neither her opposition to FDJC's motion for summary judgment nor the instant motion does Freeman dispute that she repeatedly failed to report to work on time, used profanity in the workplace, or that she displayed an unprofessional demeanor. In particular, on June 3, 2013, Freeman received a job-at-risk letter which warned that her job was at risk given her "multiple disciplinary actions regarding failure to report for duty." R. Doc. 16-16, p. 1.[5] The June 3rd letter was the second job-at-risk letter that

---

[5] The letter further states, "[t]his needs to be addressed immediately and corrected in order to avoid termination. You will be required to report for duty on time in order to avoid this action." R. Doc. 16-16, p. 1.

she received during her employment with FDJC.[6] The letter was preceded by an employee rule violation report which stated that she failed to report to work on time and she received a previous report for the same violation R. Doc. 16-15, p. 1. In short, both documents were issued in response to work-rule violations and, as mentioned above, reprimands or warnings based on documented work violations do not constitute adverse employment actions. Accordingly, the weight of the evidence reflects that Freeman did not suffer an adverse employment action. Thus, Freeman's request for reconsideration of the Court's dismissal of her retaliation claim is denied.

## IV.  Conclusion

Accordingly,

**IT IS ORDERED** that Abbie L. Freeman's **Motion for New Trial (R. Doc. 39)** is **DENIED** for the reasons assigned above.

New Orleans, Louisiana, this 10th day of August 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] Freeman also received a job-at-risk letter on October 18, 2012, which warned her that her unprofessional attitude and profanity towards her immediate supervisors and towards the youth could result in her termination if not corrected. R. Doc. 16-14, p. 1.